IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>ELMER RENE HERNANDEZ,<br><br>Defendant. | 8:21CR175<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on Defendant Elmer Rene Hernandez's ("Defendant") Motion to Suppress (Filing No. 42). An evidentiary hearing was held regarding the matter on December 22, 2021. A transcript of the proceedings has been filed and the motion is now ripe for disposition.

For the reasons set forth below, the undersigned will recommend that the motion be denied.

**FACTS**

Special Agent Daniel Pelster ("Special Agent Pelster") testified at the evidentiary hearing in this case. Special Agent Pelster testified that he has been employed by the Drug Enforcement Administration ("DEA") since March of 2019. (TR. 4.) Special Agent Pelster is in the Commercial Interdiction Unit and performs interdiction on trains, buses, and commercial package facilities such as UPS and FedEx. (TR. 4.) Special Agent Pelster testified that the goal of the Commercial Interdiction Unit is to identify couriers or parcels that are being used to transport controlled substances. (TR. 4.)

On March 18, 2021, Special Agent Pelster was working at a UPS sorting facility. (TR. 5.) While there, Special Agent Pelster seized a package and thereafter obtained a warrant to search the package. (TR. 5.) Upon its search, Special Agent Pelster discovered that the package contained about 1,898 grams of methamphetamine. (TR. 5.) At approximately 1:00 p.m. that day, officers performed a controlled delivery of the package to the recipient address listed on the package, which was 1025 South 22nd Street, Omaha, Nebraska. (TR. 5; Ex. 1.) When the package was delivered, an individual, who was later identified as Kenneth Flowers ("Flowers"), accepted the package and took it into the residence. (TR. 5-6; Ex. 1.) Special Agent Pelster then observed Flowers exit the residence using a backdoor and walk the package to a residence located 1013 South 22nd Street, Omaha, Nebraska. (TR. 5-6; Ex. 1.) Special Agent Pelster testified that he observed Flowers go to the front door of the residence and place the package inside what appeared to be a screened-in porch. (TR. 5.) Flowers was then apprehended at the door of the residence by the Nebraska State Patrol SWAT Team, who was working with Special Agent Pelster at the time. (TR. 5-6.)

Special Agent Pelster applied for a search warrant for the residence located at 1013 South 22nd Street.[1] (TR. 7; Ex. 1.) The affidavit in support of the warrant sets out the background information regarding the search of the package, what was found in the package, and the delivery of the package to the residence located at 1025 South 22nd Street. (Ex. 1.) The affidavit also states Flowers was observed leaving the 1025 South 22nd residence, with the package, and going to the residence at 1013 South 22nd Street. (Ex. 1.) The affidavit does not state that Flowers was observed placing the package inside the 1013 South 22nd Street residence, only that Flowers was observed approaching the front door of that residence where he was apprehended. (Ex. 1.) The affidavit states that Flowers was provided a *Miranda* advisement and agreed to speak with investigators. (Ex. 1.) The affidavit further provides that Flowers told officers that Defendant, who was a resident of the 1013 South 22nd residence, asked him to receive a package for him and deliver it to 1013 South 22nd Street. (Ex. 1.) Based on the information provided in the affidavit, a search warrant was signed by Judge Marcena Hendrix of the County Court of Douglas County, Nebraska. (TR. 7-8; Ex. 1.)

---

[1] That day, there were three search warrant applications based on the situation with the package – one for the package itself and one warrant for each residence.

2

On March 18, 2021, Special Agent Pelster executed the warrant on the 1013 South 22nd Street residence. (TR. 8.) At the time execution of the warrant began, no one was at the residence. (TR. 8.) Special Agent Pelster testified that approximately twenty to thirty minutes after the search began, Defendant arrived at the residence with his attorney, Mr. Nedu Igbokwe ("Mr. Igbokwe"). (TR. 8, 15.) Special Agent Pelster stated that he encountered Defendant and Mr. Igbokwe at the front of the residence and immediately placed Defendant in handcuffs. (TR. 8, 10, 15.) Defendant was then advised of his *Miranda* rights in front of Mr. Igbokwe. (TR. 8, 10.) Defendant declined to answer questions based on the advice of Mr. Igbokwe. (TR. 8, 10.) Defendant was then placed in the back of a cruiser. (TR. 11.)

During the search of the residence, officers located a personal safe in the bedroom of the home. (TR. 9.) Special Agent Pelster testified that after the safe was found, he, along with another officer, approached Mr. Igbokwe and Defendant and advised them that officers were going to open the safe. (TR. 9.) At that time, Defendant was still seated in the cruiser and Mr. Igbokwe was standing near the trunk area of the cruiser. (TR. 11.) Special Agent Pelster testified that he explained to Mr. Igbokwe and Defendant that if Defendant provided the code to the safe, officers would not have to break into the safe to access it. (TR. 9, 16.) Special Agent Pelster testified that he told Mr. Igbokwe and Defendant that if the code was not provided, officers would break into the safe. (TR. 16.) Special Agent Pelster testified that he did not consider his statement to be a threat and that he was just explaining what was going to happen. (TR. 16, 17.) Special Agent Pelster testified that he asked if Defendant would provide the code to the safe, but that this was the only question asked and that he did not ask what was in the safe. (TR. 9-11.) After Special Agent Pelster asked if Defendant would provide him the code, Mr. Igbokwe asked Defendant what was in the safe and Defendant replied "drugs." (TR. 9.) Mr. Igbokwe then advised Defendant to provide the code, which Defendant did. (TR. 9.) Officers used the code to open the safe and found cocaine, a stolen handgun, and approximately $13,000. (TR. 9.)

Special Agent Pelster testified that at the time Defendant provided the code, Defendant did not appear to be under the influence of drugs or alcohol and there were not any communication issues between Special Agent Pelster, Mr. Igbokwe, and Defendant. (TR. 11.) Special Agent Pelster also testified that he did not make any threats or promises to Defendant. (TR. 11.)

3

Special Agent Pelster testified that he routinely asks for permission to enter safes found during execution of search warrants because it prevents the destruction of property and reduces safety concerns resulting from the need to access a container with unknown contents. (TR. 12.) Special Agent Pelster stated that based on his experience, he knows firearms are sometimes locked in safes so there is always a concern about cutting or prying open a safe. (TR. 12.) He further testified that because other firearms were found in the same bedroom as the safe, there was concern with trying to rip open the safe. (TR. 12.) In addition to the items in the safe and firearms in the bedroom, officers discovered controlled substances in the residence. (TR. 12-13.)

## DISCUSSION

Defendant requests that all evidence and statements obtained as a result of his arrest and the search of his residence on March 18, 2021 be suppressed. Defendant argues the search warrant was deficient because there was no information that would give rise to probable cause that contraband would be located at the residence. Defendant further argues that his statements regarding the code to the safe and questioning regarding the contents of the safe are fruit of the poisonous tree stemming from the unlawful search and that the questioning violated his *Miranda* rights. The undersigned finds Defendant's arguments unpersuasive.

1.  **Search Warrant**

To be constitutionally valid, "a search warrant must be supported by a showing of probable cause." *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007). Probable cause exists if, based on the totality of the circumstances, a showing can be made "sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (internal quotation omitted). "Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States. v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (quotation omitted).

"After a judge has issued a search warrant upon a finding of probable cause, that finding deserves great deference." *Proell*, 485 F.3d at 430 (internal quotation omitted). A court "should uphold the decision to issue the warrant so long as it is supported by substantial evidence in the

record." *United States v. Hallam*, 407 F.3d 942, 948 (8th Cir. 2005). "When a magistrate relies solely on an affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (internal quotation omitted). "Thus, a warrant must be upheld so long as the affidavit—considered in its entirety—contains sufficient facts to establish a fair probability that contraband will be discovered in a particular place." *United States v. Maccani*, No. 20-CR-90-CJW-MAR, 2021 WL 943109, at *10 (N.D. Iowa Mar. 12, 2021).

Defendant contends the affidavit did not supply sufficient probable cause for issuance of the warrant because there was little information in the affidavit applicable to Defendant. Defendant points out that the affidavit does not state that the package was given to Defendant or that it was placed inside his residence, but only that Flowers took the package with him to the residence located at 1013 South 22nd Street where Flowers was apprehended outside. While this is true, the affidavit does state that Flowers was observed leaving the 1025 South 22nd Street residence with the package and going to the residence at 1013 South 22nd Street. The affidavit also states that Flowers was provided a *Miranda* advisement and told officers that Defendant, who resided at 1013 South 22nd Street, asked him to receive a package for him and deliver it to that address. These statements in the affidavit, coupled with the information pertaining to the package itself and its contents, were sufficient to supply probable cause for issuance of the warrant.

Moreover, even assuming the warrant was not supported by probable cause and invalid, the *Leon* good-faith exception would apply. "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). A "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (quotation omitted).

An officer's reliance on a warrant may be said to be unreasonable in four circumstances: (1) when the affidavit supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for the truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when it is entirely

5

8:21-cr-00175-BCB-SMB   Doc # 66   Filed: 02/22/22   Page 6 of 8 - Page ID # 166

unreasonable to believe that an affidavit provides probable cause to issue a warrant; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Proell*, 485 F.3d at 431 (quotation omitted). "[W]hen assessing the officer's good faith reliance on a search warrant under the *Leon* good faith exception, [courts] can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014).

Here, there is no evidence that the affidavit contained any false statements that misled the issuing judge. Further, there is no evidence indicating that the judge abandoned her judicial role when issuing the warrant. Also, it was not entirely unreasonable for Special Agent Pelster to believe his affidavit supplied the requisite probable cause based on the information he possessed at the time. Special Agent Pelster was aware that Flowers accepted the package and then immediately placed the package in the screened in porch on the front of Defendant's residence. Special Agent Pelster also knew of communications between Mr. Flowers and Defendant regarding the package. Finally, the warrant was not so facially deficient that no police officer could reasonably interpret it as valid. Based on the totality of the circumstances, including what Special Agent Pelster knew at the time but did not include in the affidavit, Special Agent Pelster's reliance on the warrant was objectively reasonable and the evidence obtained should not be suppressed.

2.   **Statement**

"The Fifth Amendment privilege against self-incrimination is safeguarded after arrest by the mandatory warning procedures outlined in *Miranda v. Arizona*, 384 U.S. 436, 467–79 (1966)." *United States v. Moore*, Crim. No. 19-306, 2020 WL 4511779, at *8 (D. Minn. Apr. 29, 2020). *Miranda* warnings are required when a person is interrogated by law enforcement after being taken into custody. *United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012). "Interrogation" is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). After giving *Miranda* warnings, "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473-74. Once a person in

6

custody has invoked his right to remain silent, law enforcement officers must scrupulously honor his assertion of that right. *Michigan v. Mosley*, 423 U.S. 96, 103 (1975); *United States v. Cody*, 114 F.3d 772, 775 (8th Cir.1997). However, "invoking of that right is not irrevocable, and it can be as effectively waived after having been claimed as it can be waived at the outset." *United States v. Rooks*, 577 F.2d 33, 37 (8th Cir. 1978).

Defendant contends his *Miranda* rights were violated when officers asked for the code to the safe after he had invoked his right to remain silent. This argument has no merit. Special Agent Pelster testified that after the safe was found, he approached Mr. Igbokwe and Defendant and advised them that officers were going to open the safe. Special Agent Pelster testified that he explained to Mr. Igbokwe and Defendant that if Defendant provided the code to the safe, officers would not have to break into the safe to access it. Special Agent Pelster testified that this statement was not meant to be a threat and that he was just explaining what was going to happen. Special Agent Pelster testified that other than asking for the code, no other questions were asked. After Special Agent Pelster asked for the code, Mr. Igbokwe asked Defendant what was in the safe and Defendant replied "drugs." Mr. Igbokwe then advised Defendant to provide the code, which Defendant did. The record shows that Special Agent Pelster jointly asked Defendant and his attorney for the code and explained what would happen if the code were not provided. It does not appear that Special Agent Pelster was attempting to elicit any incriminating information, but rather he was providing options for how the safe could be accessed. Defendant's incriminating statement regarding the contents of the safe was provided in response to a question from his attorney, not law enforcement. In short, there is no indication that officers did not scrupulously honor Defendant's invocation of his right to remain silent. Therefore, the undersigned will recommend that Defendant's request for suppression of his statements be denied.[2]

Accordingly,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Brian C. Buescher that Defendant's Motion to Suppress (Filing No. 42) be denied.

Dated this 22nd day of February, 2022.

---

[2] Because the undersigned has concluded the search of the residence was lawful, Defendant's argument that his statements were fruit of the poisonous tree stemming from an unlawful search will not be addressed.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.