IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ELMER RENE HERNANDEZ,<br><br>Defendant. | 8:21–CR–175<br><br>MEMORANDUM AND ORDER ON MOTION TO VACATE UNDER 28 U.S.C. 2255 |

Defendant Elmer Rene Hernandez filed a *pro se* Motion to Vacate under 28 U.S.C. § 2255. Filing 153. This matter is before the Court to conduct an initial review pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings and 28 U.S.C. § 2255(b). The Court finds it "plainly appears" that Hernandez is not entitled to relief and will deny his Motion. *See* 28 U.S.C. § 2255, Rule 4(b). The Court will not issue a certificate of appealability.

### I. BACKGROUND AND PRELIMINARY CONSIDERATIONS

#### A. Hernandez's Plea Agreement, Sentence, and § 2255 Motion

Pursuant to a Rule 11(c)(1)(C) plea agreement, Hernandez pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 846. Filing 1 at 1; Filing 106. The plea agreement provided that Hernandez would "receive a sentence in the range of 188 to 210 months." Filing 106 at 3. In exchange for his plea of guilty to the drug offense, the Government agreed that it would move to dismiss Count II of the Indictment, which alleged that Hernandez committed the offense of being a felon in possession of a firearm. Filing 1 at 1–2; Filing 106 at 1. Hernandez acknowledged his guilt in his Petition to Enter a Plea of Guilty. Filing 105. In the portion of the Petition that asked him to describe why he believed he was guilty of the offense,

1

Hernandez wrote, "Received methamphetamine through the U.S. postal service And I had the intent to Deliver it." Filing 105 at 7. Hernandez's plea agreement said:

> Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:
>
> On March 18, 2021, the DEA Criminal Interdiction Unit, while working at the US Post Office in Omaha, Nebraska, intercepted a package containing 1,585 grams of methamphetamine actual. A controlled delivery of the package was completed to the listed address on the package. Kenneth Flowers accepted the package at the residence, then exited out the backdoor and delivered the package to the residence of Elmer Hernandez. Flowers was arrested after delivering the package.
>
> A search warrant was obtained for Hernandez's residence. Inside, officers found various small amounts of illicit drugs (cocaine, fentanyl, MJ, etc), $13,400, and some firearms that were located in a safe. One of the firearms was stolen.

Filing 106 at 2.

On April 19, 2023, the undersigned reluctantly accepted Hernandez's Rule 11(c)(1)(C) plea agreement and sentenced him to a term of 210 months' imprisonment to be followed by a four-year term of supervised release. *See* Filing 155 at 11– 13. Judgment was entered the following day. Filing 134 at 1. Consistent with the appeal-waiver provision in his plea agreement, Hernandez did not file a direct appeal. Filing 106 at 4–5. However, he timely filed the present § 2255 Motion. Filing 152 at 1.[1] This Motion raises two claims of ineffective assistance of counsel and asks that the Court set aside his previously imposed sentence." Filing 152 at 4–5, 12.[2]

---

[1] Hernandez had 14 days in which to file his appeal after this Court entered its judgment. Fed. R. App. P. 4(b)(1)(A). Thus, his one-year deadline for filing a § 2255 Motion pursuant to 28 U.S.C. § 2255(f)(1) did not begin to run until after those 14 days had passed. *See Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008) (citing *Never Misses A Shot v. United States*, 413 F.3d 781, 782 (8th Cir. 2005). Hernandez declared under penalty of perjury that he placed his Motion in the prison mailing system on April 17, 2024, Filing 152 at 12, and the Court received it on April 22, 2024.

[2] Although not raised in his Motion, Hernandez also asserted in his subsequent brief "that law enforcement violated [his] Constitution [sic] protections when they listened to various communications between him and his attorney." Filing 156 at 2. Because this issue was not raised in his Motion—and for that matter after the deadline for

### B. Hernandez's Untimely Supporting Brief

In tandem with his timely-filed § 2255 Motion, Hernandez also moved for leave to file a brief in support of his Motion. Filing 153. Specifically, he sought a 45-day extension in which to do so. Filing 153 at 1. The Court granted Hernandez's request to submit a supplemental memorandum within 45 days of the date of the Court's Order. Filing 154 at 2. Because the Court entered this Order on April 23, 2024, Hernandez's supplemental memorandum needed to be filed no later than Friday, June 7, 2024. *See* Filing 154 at 2. According to the certificate of service included in Hernandez's memorandum, he did not submit the memorandum for mailing until June 10, 2024. Filing 156. The declaration he submitted as an attachment to his memorandum is likewise dated June 10, 2024. Filing 156 at 18. Accordingly, this submission was not timely submitted, even when the prison mail-box rule is applied. *See* Rule 3(d) of the Rules Governing Section 2255 Proceedings in the United States District Courts ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing"). Hernandez neither acknowledges the untimeliness of his submission, nor cites any good cause justifying its belated filing. *See generally* Filing 156.

As noted at the outset of this Order, it plainly appears that Hernandez's § 2255 Motion is without merit. This is true regardless of whether the Court considers the contents of his untimely supplemental memorandum. Although it is proper not to consider the supplemental memorandum due to its untimeliness, this Order nevertheless addresses the matters he raises in the supplemental memorandum in the interests of being thorough and to show why even if the Court were to consider its contents it does not alter the Court's ultimate resolution.

---

filing a § 2255 motion had already elapsed—and because this allegation does not relate to a claim of ineffective assistance of counsel, it is not properly before the Court. Moreover, Hernandez never substantively addresses this issue again in his brief or the declaration he filed along with it. *See generally* Filing 156.

3

## II. ANALYSIS

### A. Standards Applicable to 28 U.S.C. § 2255

Hernandez brings his Motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to ask the sentencing court to "vacate, set aside, or correct" a sentence upon a showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, 143 S. Ct. 1857, 1865 (2023); *see also Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) ("Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (internal quotation marks omitted) (quoting *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011))). Relief under § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (quoting *Sun Bear*, 644 F.3d at 704).

The judge receiving a § 2255 motion to vacate must first determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must order the United States to respond and consider holding a hearing. 28 U.S.C. § 2255(b); *see also* Rules 4(b) and 8(a) of the Rules Governing Section 2255 Proceedings. A court cannot accept a petitioner's allegations as true if "they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016).

4

B.  Discussion

Based upon the Court's review of Hernandez's Motion and the record, it plainly appears that he is not entitled to relief on his two ineffective assistance of counsel claims. Under the Supreme Court's test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), courts consider "whether counsel's performance was deficient, and if so, whether prejudice resulted." *United States v. Harris*, 83 F.4th 1093, 1097 (8th Cir. 2023) (internal quotations and citation omitted). "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). "Therefore, we need not inquire into the effectiveness of counsel . . . if we determine that no prejudice resulted from counsel's alleged deficiencies." *Ramirez v. United States*, 751 F.3d 604, 607 (8th Cir. 2014) (cleaned up). To meet the second prong of the *Strickland* test, petitioners normally need to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Paulson v. Newton Corr. Facility, Warden*, 773 F.3d 901, 904 (8th Cir. 2014) (internal quotation marks and citation omitted). In cases where a defendant alleges that deficient representation caused him to plead guilty, the Supreme Court has explained that the defendant must establish a "reasonable probability that he would not have entered his plea but for his counsel's deficiency[.]" *Premo v. Moore*, 562 U.S. 115, 130 (2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

   1. *Hernandez's First Ineffective Assistance of Counsel Claim*

Hernandez's first ineffective assistance of counsel claim asserts that his attorney afforded deficient representation "during the critical pre-trial/plea phase" of his case. Filing 152 at 4. To this end, he makes two specific allegations:

1) Counsel failed to fully explain the collateral consequences of accepted [sic] the plea agreement. This includes, but is not necessarily limited to, the waiver of the right

> to file a future motion pursuant to 18 U.S.C. $3582(c)(2) [sic] based upon a retroactive change in the sentencing guidelines. This is especially significant given the policy disagreements amongst Court's [sic] regarding the 10:1 actual to mixture methamphetamine sentencing ratio.
>
> 2) Counsel failed to fully investigate the possible defenses Movant might have had to the allegations contained in the Indictment.

Filing 152 at 4.

Based upon these alleged "failures," Hernandez claims that his "decision to accept the plea agreement was not done so knowingly." Filing 152 at 4. It plainly appears to the Court that this claim is without merit and is contradicted by the record. *Walker*, 810 F.3d at 580.

  a. Hernandez's § 3582 Allegation Lacks Merit

In the supporting memorandum he filed, Hernandez claims that "he entered into the negotiated plea agreement without receiving an explanation [from his attorney] as to the full range of consequences of doing so" and specifically relies on the provision of his plea agreement that waives his right to file a future motion pursuant to 18 U.S.C. § 3582(c)(2). Filing 156 at 9. Hernandez's plea agreement does, in fact, state that he "waives the right to seek or receive a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2)," Filing 106 at 3, and federal courts have recognized the legitimacy of such waivers. *See e.g.*, *United States v. Clardy*, 877 F.3d 228, 231 (6th Cir. 2017) ("In summary, where a waiver provision in a valid plea agreement specifically forbids a defendant from challenging his sentence under § 3582(c), he cannot challenge his sentence under § 3582(c)."). Hernandez does not contest the enforceability of this provision; rather, he claims that because his attorney "never took the time to explain the waiver [his] decision to enter into the plea agreement was not knowing and voluntary and thus the product of ineffective assistance of counsel." Filing 156 at 9. Hernandez's claim is belied by the record and fails under both prongs of the *Strickland* analysis.

During the change of plea hearing, a United States Magistrate Judge specifically advised Hernandez that in his plea agreement he was "waiv[ing] or giv[ing] up the right to appeal [his] conviction and sentence in this case." Filing 114 at 10. Hernandez, having taken an oath to tell the truth, acknowledged his understanding. Filing 114 at 10. The Magistrate Judge then advised Hernandez that he was "also waiving and giving up the right to file any post-conviction proceedings except in certain circumstances as set forth in [his] plea agreement." Filing 114 at 10. Hernandez again acknowledged his understanding of this as well. Filing 114 at 10. During this same hearing, Hernandez's attorney was asked to explain how he and Hernandez "went about completing the petition to enter a plea of guilty and the plea agreement in this case." Filing 114 at 15. His attorney said,

> Approximately I'd speculate two to three weeks ago Mr. Hernandez came down to my office. I had been provided an updated plea agreement from the government. We went over the terms of that plea agreement. In terms of the Petition to Enter a Plea of Guilty, I -- in that document, I asked the questions of Mr. Hernandez that are presented in the document, and I filled in his verbal responses.
>
> The same process was done with the actual plea agreement itself. I read it to him to make sure that he understood each section of that and contained his signatory and I believe my signatory lines at the end.
>
> We discussed the -- the significance of the 11(c)(1)(C) agreement as opposed to other options, including but not limited, going to trial. We debated each and at the end of the day, it was Mr. Hernandez's decision to accept this agreement.

Filing 114 at 15–16.

When Hernandez was asked by the Magistrate Judge if this was, indeed, what occurred, Hernandez responded, "Yes, Your Honor." Filing 114 at 16. Hernandez then confirmed for the Magistrate Judge that he signed the plea agreement, that he read the plea agreement before he signed it, that he understood the plea agreement, and that his attorney answered his questions about the plea agreement to his satisfaction. Filing 114 at 17. Hernandez was also explicitly asked

7

whether he was satisfied with his attorney's representation and whether he had "any complaints or objections concerning the manner in which [his attorney had] represented [him] in this matter[.]" Filing 114 at 17–18. Hernandez replied that he was satisfied with his attorney's representation, and that he had no such complaints or objections. Filing 114 at 118.

Hernandez expressly acknowledges that he "stood before the Court during his change of plea [hearing] and represented that he discussed the plea agreement with" his attorney. Filing 156 at 10. However, he claims that when he "made these representations he was unaware of the § 3582 motion waiver" and that if he had been aware of the waiver he would "never" have entered into the agreement. Filing 156 at 10. This assertion is contradicted by the record because at the change of plea hearing Hernandez was directly asked whether he had read the agreement before he signed it, and Hernandez responded, "Yes." Filing 114 at 17. Hernandez also affirmatively stated that he understood the agreement and acknowledged that his attorney read each section of the plea agreement to him to make sure he understood it. *See* Filing 114 at 15–17. If he truly "did not understand the waiver, he lied under oath to the court by testifying that he did understand." *Lafferty v. United States*, No. CIV 05-3003, 2007 WL 1202747, at *2 (D.S.D. Apr. 20, 2007). Contrary to what he says now, the record is replete with assurances from Hernandez that he read and understood his plea agreement which necessarily includes the provision waiving his right to file a § 3582 motion. Indeed, directly above where his signature appears on the plea agreement it states: "By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect." Filing 106 at 7. For all these reasons, the record contradicts the factual basis for this claim of deficient representation, and it plainly appears the first prong of the *Strickland* test has not been shown.

However, even if the Court were to assume solely for the sake of argument that his counsel rendered deficient performance, the Court would alternatively conclude that the second prong of the *Strickland* test has not been established. *See Worthington*, 631 F.3d at 498 ("Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim"). Based on the nature of Hernandez's ineffective assistance of counsel claim, establishing prejudice in this context means that he "must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59)). This "requires a 'substantial,' not just 'conceivable' likelihood of a different result." *Frausto*, 754 F.3d at 643 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)).

What makes Hernandez's claim particularly incredible is that he does not fault his counsel for failing to account for a change in the law that has since taken effect.[3] Rather, he claims his counsel failed to advise him of a provision in his plea agreement that ostensibly forecloses a potential future claim for relief *if* there is a change in the United States Sentencing Guidelines *and* that change is made retroactively applicable to him. That is, the particular change in the guidelines he hopes will one day materialize has not yet come to pass—something Hernandez expressly recognizes. Filing 156 at 11. Therefore, to prevail on this claim he would need to show that if his counsel had advised him that his plea agreement prevented him from seeking a potential future sentence reduction based on something that may never even happen, he would not have entered into the plea agreement. Based on the Court's review of the record, it plainly appears Hernandez has not made a substantial showing that he would not have entered into this plea agreement if he

---

[3] Even if he had, the Eighth Circuit has "repeatedly held, 'counsel's failure to anticipate a change in the law does not establish that counsel's performance was deficient.'" *Walker*, 810 F.3d at 577 (quoting *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014)).

9

had better understood the possibility he "might" one day be able to avail himself of relief pursuant to 18 U.S.C. § 3582(c) absent his waiver provision. For these reasons, he cannot establish the prejudice prong of the *Strickland* analysis on this claim.

b. Hernandez's "Failure to Investigate Possible Defenses" Allegation Lacks Merit

The second allegation that Hernandez makes in furtherance of his first ineffective assistance of counsel claim is that his counsel "failed to fully investigate the possible defenses [Hernandez] might have had to the allegations contained in the Indictment." Filing 152 at 4. Yet, it is unclear what "possible defenses" Hernandez believes his counsel should have looked into further. His supplemental memorandum makes no argument on this front. *See* Filing 156 at 9–11. Regardless, this assertion is—once again—contradicted by the record. *Walker*, 810 F.3d at 580. During the change of plea hearing, Hernandez's counsel was asked by the Magistrate Judge whether he had "discussed with the defendant any defenses he might have to the charges contained in the Indictment filed in this case[.]" Filing 114 at 21. Hernandez's counsel responded in the affirmative, and the Magistrate Judge then asked Hernandez whether that was correct. Filing 114 at 21. Hernandez said, "Yes it is." Filing 114 at 22. As previously noted, Hernandez also told the Magistrate Judge that he was satisfied with his counsel's representation in this matter and did not have any complaints or objections regarding the manner in which he represented him. Filing 114 at 18. These "representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017) (quoting *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997)). The Court concludes that these sworn statements in the record contradict Hernandez's generalized allegation that his counsel failed to fully investigate possible defenses—whatever those defenses

10

may have been. Accordingly, this allegation fails to give rise to a claim of ineffective assistance of counsel.

2. *Hernandez's Second Ineffective Assistance of Counsel Claim*

Hernandez's second claim of ineffective assistance of counsel also "plainly appears" to be without merit. *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. He asserts that his counsel was ineffective by failing "to present mitigation evidence to help persuade the Court that a low-end guideline sentence was sufficient but not greater than necessary to serve the ends of justice." Filing 152 at 5. What Hernandez fails to recognize is that the Court *did* sentence him to a low-end guideline sentence when it imposed 210 months of incarceration. Hernandez's guideline custody range was 210 to 262 months based on a Total Offense Level of 35 and a Criminal History Category of III. Filing 155 at 3-4. His Rule 11(c)(1)(C) plea agreement provided that he "shall receive a sentence in the range of 188 to 210 months." Filing 106 at 3. Hernandez's counsel negotiated an agreement that ensured he could not receive anything worse than a low-end guidelines sentence. Indeed, the undersigned explicitly stated on the record that although the Court was reluctant to accept this plea agreement, one of the reasons the Court would do so is because the range provided for "at least hits the bottom end of the guidelines." Filing 155 at 12. The very premise of Hernandez's ineffective assistance of counsel claim lacks a basis in reality and is contradicted by the record. *See Walker*, 810 F.3d at 580.

Hernandez's brief attempts to recast the nature of this claim by faulting his counsel for failing "to attend the PSR interview" and failing "to thereafter object to the criminal history calculation." Filing 156 at 11. This is not what he alleged in his actual § 2255 Motion. *See* Filing 152 at 5. Assuming for the sake of argument that these new allegations contained in his brief are enveloped within the claim he makes in his Motion, they do not alter the analysis. With respect to

11

Hernandez's complaint that his counsel failed to attend the PSR interview, a defendant "does not have a Sixth Amendment right to counsel during a PSR interview, as it is not a 'critical stage' of the prosecution[.]" *United States v. King*, 559 F.3d 810, 813–14 (8th Cir. 2009); *accord Fleetwood v. United States*, 618 F. App'x 874, 875 (8th Cir. 2015) (per curiam). Hernandez's claim that he was denied the Sixth Amendment right to "effective" representation of counsel during a non-critical stage falls flat given he had no underlying Sixth Amendment right to counsel—effective or otherwise—during the PSR interview. *See King*, 559 F.3d at 814 ("No court has found the Sixth Amendment right to counsel applies to routine presentence interviews") (cleaned up) (quoting *United States v. Tyler*, 281 F.3d 84, 96 (3d Cir. 2002)). As for the claim that his counsel should have objected to his criminal history category, even Hernandez acknowledges that if this objection were sustained it still would not have altered the custody range permitted by the Rule 11(c)(1)(C) plea agreement. Filing 156 at 12. Moreover, and assuming again solely for the sake of argument that Hernandez should have been placed in Criminal History Category I, his guideline custody range at the time would have been 168 to 210 months.[4] Thus, a sentence of 210 months would have been both within the scope of the guidelines and the range permitted by the Rule 11(c)(1)(C) plea agreement. At the sentencing hearing, the undersigned specifically told Hernandez, "I don't think 210 months is enough to be honest with you given what you did" but that the Court would "reluctantly accept the plea agreement." Filing 155 at 12. Therefore, to the extent that Hernandez now argues that such an objection may have led the court to impose a lower sentence, the record plainly demonstrates otherwise.

---

[4] In his brief, Hernandez claims that his guideline calculation would have been "135-168 months." Filing 156 at 4. Hernandez is incorrect because a Total Offense Level of 35 and a Criminal History Category of I equates to a guideline custody range of 168 to 210 months. *See* U.S.S.G. Ch. 5 Pt. A. A guideline range of 135 to 168 would apply if Hernandez had a Total Offense Level of 33. *Id.* To the extent Hernandez arrives at this figure by further factoring in a two-level downward adjustment for being a zero-point offender, the Court notes that this adjustment did not yet apply at the time Hernandez was sentenced on April 19, 2023. *See* U.S.S.G. App. C at 244 (providing that the effective date for Amendment 821 was November 1, 2023).

### C. Certificate of Appealability

No appeal may be taken on a § 2255 motion to vacate unless a judge issues a certificate of appealability, which requires the appellant to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)–(2). To make "a substantial showing of the denial of a constitutional right" after the district court denies a constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, a petitioner is entitled to a certificate of appealability if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Reasonable jurists would not find the Court's decisions debatable. Therefore, the Court will not issue a certificate of appealability.

### III. CONCLUSION

A defendant's "plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom." *United States v. Flynn*, 969 F.3d 873, 877 (8th Cir. 2020) (internal quotation and citation omitted). For the reasons explained above, it plainly appears that Hernandez's ineffective assistance of counsel claims are without merit. The matters he raises in his Motion and the record conclusively show that Hernandez is entitled to no relief, and reasonable jurists would not find the Court's decisions debatable. Accordingly,

IT IS ORDERED:

1. Hernandez's Motion to Vacate Under 28 U.S.C. § 2255, Filing 152, is denied; and
2. The Court will not issue a certificate of appealability.

Dated this 26th day of July, 2024.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge